UNITED STATES of America

v.

John W. SHANNON, Jr., Nathaniel Wiggins, Harry William Parker, Leroy Wiggins, Theodore R. Whaley,

Leroy Wiggins, Appellant.

No. 17485.

United States Court of Appeals, Third Circuit.

Argued April 2, 1970.

Decided April 29, 1970.

M. Gene Haeberle, Camden, N. J., for appellant.

D. William Subin, Asst. U. S. Atty., Camden, N. J. (Frederick B. Lacey, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before HASTIE, Chief Judge, and MARIS and ADAMS, Circuit Judges.

OPINION OF THE COURT

ADAMS, Circuit Judge.

Leroy Wiggins was one of five defendants charged with armed robbery of a bank on May 26, 1967, in violation of 18 U.S.C. §§ 2113(a), 2113(b), 2113(d). Following a jury trial, Wiggins was found guilty on all three counts and sentenced to twelve years imprisonment. Wiggins appeals the conviction contending that pre-trial identifications of him by a bank teller were so "prejudicially unfair" that the in-court identification by the teller witness was reversible error. The contested pre-trial identifications were based on FBI photographs and on a one-man line-up.

On the Monday following the robbery, an FBI Agent showed one of the bank tellers, Mrs. Linda Dempsey, eleven photographs. From these photographs, she identified Wiggins as the man who appeared at her teller's cage. The photographs were all of Negro males; nine of the eleven men pictured had mustach-

es; the pictures of Wiggins and one other man did not have mustaches; and three photographs, including that of Wiggins, had notations of prior criminal records on the backs of the pictures. Some time after the photographic identification, Mrs. Dempsey identified Wiggins at a police station in a one-man line-up. She did not identify Wiggins immediately at the police station, but did so after he was requested to dress in clothing similar to that worn during the robbery. At trial, Mrs. Dempsey identified Wiggins as the man who appeared at the teller's cage, pointed a gun at her, and handed her a bag to be filled with money.

■ In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court held that a post-indictment line-up was a critical stage of the criminal proceeding at which an accused was guaranteed the right to counsel by the Sixth Amendment, and that a courtroom identification must be excluded unless the prosecution shows, by "clear and convincing evidence", that it had an independent origin. The *Wade* doctrine does not apply to this case because the line-up here was conducted before the date of the *Wade* decision, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), held that *Wade* is not applicable to line-ups conducted prior to the date of that decision.

■ Pre-trial viewing of a defendant standing alone has been held not to be so unfair and inherently prejudicial as to require exclusion of an in-court identification and reversal of a conviction unless there are other circumstances indicating a likelihood of misidentification. *See e. g.* United States v. Black, 412 F.2d 687 (6th Cir. 1969); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968); Cline v. United States, 395 F.2d 138 (8th Cir. 1968). *See also* Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968). Wiggins contends that the photographs presented to Mrs. Dempsey unfairly emphasized him, and that such emphasis in combination with the one-man line-up could have easily resulted in misidentification. We do not agree.

This case is controlled by Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In *Simmons* the Supreme Court recognized that there are dangers of misidentification inherent in pre-trial examination of photographs, just as there are dangers of misidentification from line-ups. When prejudicial photographic procedures focusing on a particular suspect are used, the possibilities of misidentification are increased. The Supreme Court did not, however, prescribe a prophylactic rule excluding *all* in-court identifications based on pre-trial identifications which were not absolutely proper. In *Simmons* the Court said that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". 390 U.S. at 384, 88 S.Ct. at 971. *See also* United States v. Conway, 415 F.2d 158 (3d Cir. 1969).

Although the photographs selected by the FBI in its investigation may have tended to focus on Wiggins by including too few suspects without mustaches, there are sufficient circumstances in this case from which we conclude that the procedure did not lead to "misidentification". *Cf.* United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2d Cir. 1969). As in the bank robbery in *Simmons*, this robbery was conducted during the day in an adequately lighted bank. Mrs. Dempsey had sufficient opportunity to observe Wiggins, who was approximately three feet away from her. She made a positive identification from the photographs which were presented to her three days after the robbery, and another positive identification at trial. When she was shown the pictures, the bank robbers had not been arrested and the urgency regarding apprehension was similar to that in *Simmons*. She also

identified Wiggins at the police station. Although the photographs may have highlighted the defendant because he did not have a mustache, there is nothing in the record to indicate that Mrs. Dempsey had previously described the hold-up man as having a mustache. There is also here, as in *Simmons,* other evidence incriminating the defendant. For example, two witnesses placed him in the robbery vehicle shortly before the offense.

If Wiggins' counsel considered him prejudiced in any way by the pictures, he could have countered the prejudice by moving to introduce the photographs into evidence so that the jury could consider all the circumstances surrounding the identifications. He did not do so. Neither did he ask for a pre-trial conference to exclude the identification, nor did he even object to the identification.

Wiggins also attacks the photographs because of notations indicating prior arrests on the backs of several of them, including defendant's. Such is not prejudicial, since there is nothing in the record indicating that Mrs. Dempsey saw the backs of the pictures. In addition, there was a similar notation on the back of another photograph which pictured a man without a mustache.

■ As an additional ground for this appeal, Wiggins contends that certain testimony was so prejudicial that it constitutes reversible error. At the trial, Wiggins' counsel asked an FBI Agent to read from the back of the picture of Wiggins. Before the Agent answered, counsel asked the Agent to give the defendant's description. The Agent proceeded to read *everything* on the back of the picture. Although Wiggins' counsel did not then object, Wiggins now complains that the reading of the material on the back of the photograph pertaining to his criminal record was reversible error. Since this evidence was given in response to questions by the defense, Wiggins may not now properly assert that the answer was prejudicial and reversible error. We find no merit in Wiggins' other contention regarding an oral statement by Wiggins read into the record, the withdrawal of defendant Parker from the trial, and Wiggins' alleged deprivation of a preliminary hearing.

The judgment of the District Court will be affirmed.