UNITED STATES of America ex rel.
Ronald James DESSUS

v.

COMMONWEALTH OF PENN-
SYLVANIA.
Misc. No. 69–609.

United States District Court,
E. D. Pennsylvania.
June 29, 1970.

Arlen Specter, Dist. Atty., Philadelphia County, Samuel T. Swanson, Asst. Dist. Atty., for Commonwealth of Pennsylvania.

Ronald James Dessus, pro se.

### OPINION

LUONGO, District Judge.

Ronald James Dessus, a state prisoner, has filed this petition for writ of habeas corpus contending that his conviction on various charges of robbery, burglary, assault and battery and rape (Indictment Nos. 283–289, 292, 293, January Sessions 1967, Court of Quarter Sessions, County of Philadelphia)[1] were obtained in violation of his constitutional rights.

The question arises as to the jurisdiction of this court to consider relator's petition because even if I were to hold that the convictions under attack here were obtained in violation of relator's constitutional rights, he would not be entitled to release from custody because of the murder conviction. Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). In view of the denial of the petition for writ of habeas corpus, it will not be necessary to resolve this question. United States ex rel.

---

1. Dessus was also charged, in bill No. 290, with the murder of Lena Alexandroff. The jury found him guilty of murder in the first degree and fixed the penalty at life imprisonment. Relator did not appeal the murder conviction for fear of placing himself in jeopardy of the death penalty. He does not attack the murder conviction in this petition for writ of habeas corpus. He has not exhausted state remedies on this point. See Commonwealth v. Littlejohn, 433 Pa. 336, 250 A.2d 811 (1969).

Dessus alleges that he was deprived of rights guaranteed by the federal constitution in that: (1) the search and seizure of certain items of evidence at the time of his arrest violated his rights under the Fourth Amendment because his arrest was without probable cause; (2) the identification by one of the victims at a police lineup while he was not represented by counsel violated his rights under the Sixth Amendment; (3) he was denied the right to a fair trial and due process of law by the state courts by their (a) denial of funds to hire a psychologist, (b) denial of funds to investigate prospective members of the grand jury, (c) denial of his motion for a continuance, (d) refusal to remove newsmen from the bar of the court, (e) refusal to permit defense counsel to question prospective members of the petit jury concerning their knowledge of the fate of a co-defendant, (f) refusal to accept his plea of guilty to two counts of bill No. 288, and (g) charge on insanity; (4) he was denied due process by various trial rulings including (a) refusal to charge on the crime of fornication, (b) admitting into evidence statements of the deceased (Lena Alexandroff) in violation of the hearsay rule, (c) admitting into evidence statements by relator to a fellow prisoner in violation of the hearsay rule, (d) admitting into evidence the results of psychological tests administered by the Commonwealth in violation of the hearsay rule, and (e) failure to declare a mistrial for the Commonwealth's failure to follow the court's order on the sequestration of witnesses.[2]

The background facts of this petition, briefly, are these:

In the early morning hours of April 3, 1966, three women—Lena Alexandroff, 79 years of age, her daughter Natalie Tuchar, 44 years of age, and Natalie's daughter, Paula, 14 years of age—were brutally beaten and raped in their home at 5120 Chester Avenue, Philadelphia, by three men. As a result of the injuries sustained that morning, Lena Alexandroff died on April 20, 1966.

When the police arrived at the scene of the crime, Paula Tuchar gave them a description of two of the assailants. A few minutes later Dessus and a co-defendant, John Burgess, were arrested a few blocks from the scene of the crime. A third co-defendant was later arrested. There was a great deal of publicity about the crime,[3] but because of the grant of a motion to quash his indictment (see Commonwealth v. Dessus, 423 Pa. 177, 224 A.2d 188 (1966)) Dessus did not come to trial until March, 1967, almost a full year after the date of the crime. By that time much of the pretrial publicity had subsided.

After a jury trial, Dessus was found guilty of murder in the first degree (on bill No. 290 which is not under attack here) and the penalty for that crime was set at life imprisonment. The jury also found Dessus guilty of all counts in the remaining bill save one charging him with assault and battery with intent to murder Lena Alexandroff. On these other charges, relator was sentenced to 30–60 years to run concurrently with the life sentence imposed on the murder bill. The Superior Court of Pennsylvania affirmed the judgment of sentence, Com-

---

Drew v. Myers, 327 F.2d 174 (3d Cir.), cert. denied, 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 52 (1964).

2. Relator also raises a question regarding the impropriety of his sentence on Indictment Nos. 283, 285. The Superior Court recognized the defect and remanded the case to the Court of Quarter Sessions for resentencing, but to this date no action has been taken on the

Superior Court's order, perhaps because the state trial records were removed to this court. In any case, it is clear that relator has not exhausted his state remedies on this issue and hence it is not properly before me.

3. It appears that as a result of the public outcry over this crime, the penalty for rape in Pennsylvania was drastically increased.

monwealth v. Dessus, 214 Pa.Super. 347, 257 A.2d 867 (1969), and the Supreme Court of Pennsylvania denied his petition for further appeal. The petition here followed immediately.

After a careful study of the voluminous state records, I conclude that relator's contentions may be disposed of on those state records without an evidentiary hearing in this court. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

1. *Arrest and Seizure.*

Relator contends that the arrest and subsequent search of his person were unlawful because the arresting officers did not have probable cause to arrest him. The arrest was made under these circumstances:

The police arrived at the scene of the crime at approximately 4:20 a. m. Within a few minutes, Paula Tuchar, one of the victims, gave a brief description of two men to an Officer Webster who relayed the description over police radio. The men were described as Negro males, both about 5′ 10″ tall, both wearing dark clothing, but one wearing a light tan trenchcoat, and the other possibly wearing a hat. About five blocks from the scene of the crime, at approximately 4:30 a. m., a police cruiser spotted Dessus and Burgess walking down the street. Both men were Negro and stood about 5′ 10″ tall. Burgess was wearing a hat and dark clothing, while Dessus was dressed in dark clothing and was carrying a light tan trenchcoat. The police cruiser pulled up alongside the suspects and the officers requested them to get into the car. Burgess began to do so, but Dessus started to run down the street. One of the policemen ran after him. During the chase Dessus was observed dropping the trenchcoat on a church lawn. He then hid underneath an automobile where he was eventually apprehended. The police retrieved the trenchcoat. Wrapped in it was a table model radio which was later identified as belonging to Lena Alexandroff. The police then took Dessus and Burgess (and another suspect later released) to a police station where they made a more thorough examination of relator's person. On him, they found numerous items, including a woman's comb, a ring, and a pair of earrings, all of which were later identified as belonging to the victims.

■ An arrest without a warrant is valid under the Fourth and Fourteenth Amendments so long as it is based on probable cause that the person arrested was committing or had committed an offense. United States v. Margeson, 259 F.Supp. 256 (E.D.Pa.1966). Probable cause exists where "the facts and circumstances within their [the arresting officers] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); United States v. Margeson, *supra.*

■ In the instant case, the police were in the possession of sufficient facts to give them probable cause to arrest relator. When the police officers spotted them, Dessus and Burgess were walking on a deserted street in the early morning hours, near the scene of the crime. The two men fit the general description relayed by police radio. Coupled with these factors was Dessus' attempted flight when approached by the police officers. At that point there can be no doubt that the police officers had probable cause to arrest Dessus. See, e. g., Davis v. United States, 409 F.2d 1095 (5th Cir. 1969); United States ex rel. Walls v. Mancusi, 406 F.2d 505 (2d Cir.), cert. denied, 395 U.S. 958, 89 S.Ct. 2099, 23 L.Ed.2d 745 (1969); United States ex rel. Foose v. Rundle, 389 F.2d 54 (3d Cir.), cert. denied, 392 U.S. 914, 88 S.Ct. 2075, 20 L.Ed.2d 1372 (1968); Cotton v. United States, 371 F.2d 385 (9th Cir. 1967).

■ Since the arrest was lawful, the search of Dessus at the place of the

arrest [Nunez v. United States, 370 F. 2d 538 (5th Cir. 1967); United States ex rel. Jenkins v. Bookbinder, 291 F. Supp. 87 (E.D.Pa.1968)] and at the police station were lawful. Cotton v. United States, *supra*. Use of evidence thus obtained violated none of relator's constitutional rights.

### 2. *Line-up.*

When the victims were taken to the hospital, the police arranged for Dessus, Burgess and another suspect to be brought to the hospital for identification. The police presented each suspect first to Natalie Tuchar and then to Lena Alexandroff. Relator contends that it was error to admit the identification by Lena Alexandroff into evidence for two reasons: (a) her statements were hearsay; and (b) the identification was made while relator was without counsel, and hence violated his Sixth and Fourteenth Amendment rights.

The first contention raises only a question of admissibility of evidence under state law, a matter not cognizable in this court on a petition for writ of habeas corpus. See United States ex rel. Greer v. Pate, 393 F.2d 44 (7th Cir.), cert. denied, 393 U.S. 890, 89 S.Ct. 209, 21 L.Ed.2d 168 (1968), p. 422 *infra*.

As for the contention that he was denied rights guaranteed by the Sixth Amendment, relator relies upon United States v. Wade, 388 U.S. 218, 219, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Neither of these cases is retroactive, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), consequently Dessus is entitled to relief only if the confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Stovall v. Denno, *supra* at 302, 87 S.Ct. at 1972. A single line-up identification, particularly where there is imminent danger of the victim's death, has been held not to be a violation of due process [Stovall v. Denno, *supra*] absent the existence of "other circumstances indicating a likelihood of misidentification."[4] See United States v. Shannon, 424 F.2d 476 (3d Cir., 1970). The facts in the instant case are remarkably similar to those surrounding the line-up which was found not to violate due process in *Stovall*. I conclude, therefore, that the identification of Dessus by Lena Alexandroff did not result from a confrontation so suggestive as to constitute a denial of due process.

### 3. *Right to Fair Trial and Due Process.*

(a) *Denial of Funds to Hire a Psychologist.*

Prior to trial, Dessus' counsel moved pursuant to 19 P.S. § 784[5] for funds to

---

4. A third suspect was not identified by either woman and was released.

5. In pertinent part, 19 P.S. § 784 provides:

"Whenever any person, charged with murder, shall make and file with the clerk of the court of quarter sessions an affidavit, setting forth that he or she is wholly destitute of means to employ counsel and prepare for his or her defense, the judge * * * to whom such affidavit is presented, shall assign to such person counsel * * * to represent and defend such person. Such appointed counsel may petition the court * * * to secure a rule to show cause why the court should not permit a special investigator or investigators to assist them in the preparation of the case, or such specialists as *justice of the case may require* for the proper defense of their clients, and following a hearing at which time such court appointed counsel *shall sustain their request by evidence satisfactory to the court,* the court shall grant such special investigator or investigators or expert witness or witnesses; and such expert assistance to such appointed counsel shall be paid by the county in which the person is charged upon approval by the court of such charges. * * *" (Emphasis added.)
By its wording, the statute provides for such assistance only in murder cases and there is a serious question whether

engage the services of a psychiatrist and a psychologist. The court granted the request for a psychiatrist, but denied it as to a psychologist. Relator now alleges that the denial of his motion for funds to retain a psychologist deprived him of the effective assistance of counsel and due process because psychological tests were necessary to his insanity defense. To reinforce his position, relator notes that the Commonwealth was permitted to introduce evidence of psychological tests administered by its psychologist.

 An accused is entitled, at least in capital cases, to the assistance of experts necessary to adequately prepare a defense. See Bush v. McCollum, 231 F. Supp. 560 (N.D.Texas 1964), aff'd 344 F.2d 672 (5th Cir. 1965). This does not mean, however, that the state must promote a battle of experts. McGarty v. O'Brien, 188 F.2d 151 (1st Cir.), cert. denied, 341 U.S. 928, 71 S.Ct. 794, 95 L. Ed. 1359, reh. denied, 341 U.S. 957, 71 S.Ct. 1005, 95 L.Ed. 1378 (1951). Under Pennsylvania law, the granting of funds for the hiring of experts is committed to the trial court's discretion, 19 P.S. § 784; Commonwealth v. Phelan, 427 Pa. 265, 234 A.2d 540 (1967), cert. denied, 391 U.S. 920, 88 S.Ct. 1803, 20 L.Ed.2d 657 (1968), and its decision will not be overturned except for a clear abuse of discretion which prejudices the accused's right to the effective assistance of counsel. See United States ex rel. Phelan v. Brierley, 312 F.Supp. 350 (E.D.Pa. 1970); Commonwealth v. Phelan, *supra*.

 Although it would appear, at first blush, that the court's refusal to authorize the hiring of a psychologist was prejudicial to Dessus, a closer examination of the trial record reveals that it was not. The results of psychological testing would have been of value only to aid the psychiatrist to form an opinion as to Dessus' sanity at the time the crime was committed. At trial Dr. James D. Nelson, the psychiatrist retained by relator, stated that he had utilized psychological tests administered to relator a few years prior to the trial by the Philadelphia Board of Education, and that he needed no further tests to aid him in forming his opinion as to relator's sanity. Under these circumstances the denial of funds did not deprive Dessus of the effective assistance of counsel.[6] See McGarty v. O'Brien, *supra*.

(b) *Funds to Investigate Prospective Members of the Grand Jury.*

Prior to trial, Dessus moved pursuant to 19 P.S. § 784 for funds to hire an investigator to inquire into the background of prospective members of the grand jury to determine if any such person was biased or prejudiced toward him. The motion was denied. Dessus now contends that the failure to provide funds for such an investigation denied him due process and the equal protection of the laws by depriving him of the only practical method by which he could challenge individual grand jurors for cause under Rule 203, Pa.R.Crim.P., 19 P.S. Appendix.[7]

---

the issues presented under this statute are properly before me because of the absence of an attack upon the murder conviction. Since, however, the Superior Court of Pennsylvania considered the same substantive issues on appeal even though that court recognized the limitation inherent in 19 P.S. § 784 and even though an appeal from a murder conviction would have gone directly to the Pennsylvania Supreme Court, I have also considered the substantive issues.

6. It should be noted that the Commonwealth's test results were not admitted into evidence until elicited on cross-examination by relator's counsel. Relator

cannot now claim that this evidence prejudiced his cause. United States v. Shannon, supra.

7. Rule 203 of the Pennsylvania Rules of Criminal Procedure provides as follows:
 "(a) A defendant who has been held for court or the attorney for the Commonwealth may challenge the array of the grand jury or an individual grand juror. A challenge to the array may be made only on the ground that the grand jury was not selected, drawn or summoned substantially in accordance with law. An individual grand juror may be challenged for cause. All challenges must be made before the grand

 Valid grand jury selection "is a constitutionally protected right." Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955). Due process, however, requires only that the jury be selected in accordance with law [See United States v. McKay, 45 F.Supp. 1007 (E.D.Mich.1942)] and that the accused be given an opportunity to challenge the array of jurors or an individual member for failure to meet the legal qualifications outlined by statute. See Reece v. Georgia, *supra;* United States v. Knowles, 147 F.Supp. 19 (D.D.C.1957). The equal protection clause of the Fourteenth Amendment merely requires that there be no systematic discrimination in the selection of grand jurors based on unwarranted classifications such as race or color. See Reece v. Georgia, *supra;* Brooks v. Beto, 366 F.2d 1 (5th Cir. 1966), cert. denied, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135 (1967) reh. denied, 386 U.S. 1043, 87 S.Ct. 1489, 18 L.Ed.2d 618 (1967).

 Neither federal nor state law permit an investigation of prospective members of a grand jury to determine possible bias since neither federal nor state law permit a challenge for cause on such grounds. See United States v. Hoffa, 349 F.2d 20 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), reh. denied, 386 U.S. 940, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967) and 386 U.S. 951, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967); Estes v. United States, 335 F.2d 609 (5th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965), reh. denied, 380 U.S. 926, 85 S.Ct. 884, 13 L.Ed.2d 814 (1965); United States v. Knowles, *supra;* Commonwealth v. Dessus, 214 Pa.Super. 347, 257 A.2d 867 (1969). Consequently, Dessus was not deprived of due process or the equal protection of the laws by the state court's refusal to permit him to hire an investigator to inquire into the background of prospective members of the grand jury.

(c) *Motion for Continuance.*

 The right to a trial by jury includes the guarantee that an accused will be given a fair trial by a panel of impartial jurors. Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). A jury's verdict must be based on the evidence presented in the course of trial, and not on the extraneous commentary presented in the forum of public opinion by the news media. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). If a juror's decision has been influenced by inflammatory news reports prior to trial, an accused has been deprived of a fair trial, and due process requires a reversal of such a conviction. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

Relator has argued both here and in the state courts that the pretrial publicity surrounding the case was so prejudicial as to require a continuance. More specifically, he argues that the opening of his trial on the heels of the trial of a co-defendant who was found guilty of first degree murder and sentenced to death, and the publicity surrounding that trial, required the court to grant a continuance.

I find relator's argument without merit.

 A motion for continuance is directed to the discretion of the trial

---

jurors are sworn, unless reasonable opportunity did not exist prior thereto; in any event a challenge must be made before the bill of indictment is submitted to the grand jury as provided in subdivision (c) hereof.

(b) All challenges shall be in writing and shall specify the grounds therefor. The parties shall not have a right to examine grand jurors on voir dire. If a challenge to the array is sustained, the grand jury shall be discharged; if a challenge to an individual grand juror is sustained, the court shall make an appropriate order which may include standing the challenged juror aside for a particular case or discharging him from further service. Where necessary, the court may replace a juror who has been stood aside or discharged."

court. The trial court's decision on this subject will not be disturbed unless the error is manifest. Irvin v. Dowd, *supra*. The publicity complained of was not "inherently prejudicial." See Sheppard v. Maxwell, *supra;* Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). It appears to have been the kind of publicity one would expect to attend any such gruesome crime. As noted in the trial records, for example, the news reports during the voir dire contained mostly factual data as to relator's alleged complicity in the crime and the number of jurors selected.

■■■ Since the publicity was not inherently prejudicial, it is relator's burden to show "identifiable prejudice." From a thorough examination of the voir dire I am satisfied that relator was tried by an impartial jury. The trial court sustained challenges for cause for all prospective jurors who had even heard of the fate of a co-defendant. Of the jurors finally selected not one had read of the case since the time of the crime almost a year earlier. Furthermore, all jurors selected testified under oath that they would base their decision only on the evidence presented in court and disregard whatever they might have heard or read about the incident prior to trial. This is all that due process requires. Irvin v. Dowd, *supra*. The trial court's denial of the motion for a continuance did not deprive Dessus of due process of law.

(d) *Newsmen.*

During the trial, the court permitted newsmen to sit inside the bar of the court. Dessus contends that this conduct, coupled with the extensive pretrial publicity surrounding the case, seriously prejudiced his right to a fair trial. He relies upon Sheppard v. Maxwell, *supra.,* in which the Supreme Court specifically condemned the practice of permitting newsmen inside the bar of the court.

No objection was made concerning the newsmen until the middle of the second week of trial. Until then, the trial judge was apparently oblivious to the presence of the newsmen. When the matter was brought to the court's attention, he expressed his view that Dessus had waived the right to object by the delay.

■■■ A waiver is "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Defense counsel was familiar with the holding in Sheppard v. Maxwell, *supra*, and was conscious of the fact that newsmen were seated within the bar of the court for over a week. The trial judge, on the other hand, was not aware of the *Sheppard* ruling. Under the circumstances, counsel's failure to act waived whatever objection might have been raised with respect to the seating of the newsmen for the first week and a half of trial. When the matter was belatedly brought to his attention, the trial judge denied the request to have the newsmen removed from the bar of the court for fear that the jurors might become suspicious when they noticed the change. This was quite proper under the circumstances. See Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). The trial court also noted that the number of newsmen at no time exceeded three or four, that they were seated at an inconspicuous table on the opposite side of the room from the jury and that they had not disrupted the proceedings in any way. Under these circumstances, relator was not prejudiced by the presence of the newsmen inside the bar of the court. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *Cf.* Sheppard v. Maxwell, *supra*.

(e) *Refusal of the Court to Permit Questioning of Prospective Members of Petit Jury on Their Knowledge of the Fate of a Co-defendant.*

During the first day of the voir dire, a prospective juror admitted reading quite a bit about the case in the news-

papers. The trial judge refused to permit defense counsel to question him or other prospective jurors concerning their knowledge of the fate of a co-defendant, John Burgess, who had recently been convicted for first degree murder. On the following day, the court reversed its ruling, permitted such questioning and granted a challenge for cause for any prospective juror who recalled the outcome of Burgess' trial. The juror who had acknowledged, on the first day of voir dire, having read about the case, was excused by the exercise of a peremptory challenge by the defense.

▇▇▇▇ Dessus was not harmed by the court's first day ruling. True he used a peremptory challenge to strike the juror who had read of the case, but he wasn't prejudiced by the loss of a peremptory strike, for at the conclusion of the striking process, he still had one peremptory challenge left. Further, the trial judge noted that if the defense desired additional peremptory challenges he would review the situation as to the particular juror sought to be stricken.

(f) *Change of Plea.*

At his arraignment some six weeks prior to trial, Dessus pled guilty to two counts of Indictment No. 283 charging him with assault and battery and aggravated assault and battery on Lena Alexandroff, and pled not guilty to all other charges. The conceded purpose of this strategy was to enable him to plead *autrefois convict* to the murder indictment at the time of trial. At the close of the voir dire, the Commonwealth moved to have the guilty pleas set aside and Dessus re-arraigned on those charges. After some argument, the trial judge ordered the guilty pleas stricken, and pleas of not guilty entered.

Relator now contends that the re-arraignment conducted prior to trial violated his rights to the due process of law in two ways: (1) the ten day waiting period prescribed by Rule 317, Pa.R. Crim.P., between arraignment and trial was not adhered to, thus leaving relator without adequate notice or time to prepare for trial, and (2) members of the petit jury were not questioned about their knowledge of the prior arraignment.

▇▇▇▇ The purpose of an arraignment is to inform the accused of the charges against him so that he might have an opportunity to plead thereto and prepare for trial. See United States ex rel. Phelan v. Brierley, *supra;* Yodock v. United States, 97 F.Supp. 307 (M.D.Pa. 1951). Rule 317 merely codifies this concept into the Pennsylvania criminal law. See Commonwealth v. Dessus, 214 Pa.Super. 347, 257 A.2d 867 (1969). Dessus was certainly aware of the charges against him. Further, at the arraignment, the presiding judge expressed serious doubt about the propriety of the guilty plea to the assault charges. Under the circumstances, in light of the provisions of Rule 320, Pa.R.Crim.P., under which every accused is put on notice that a plea may be rejected, Dessus and his counsel must certainly have been aware of the likelihood that they would be called upon to defend against those charges as well as all the others.

▇▇▇▇ As to relator's complaint that the jurors were not questioned about their knowledge of the prior arraignment, the voir dire examination indicates that not one juror selected had either read or heard about Dessus since the time the crime was committed almost a year earlier. The arraignment at which the guilty plea was entered was held approximately six weeks prior to trial. The jurors' responses to the voir dire establish that they had no knowledge of the prior arraignment and therefore could not have known of the guilty plea.

(g) *Charge of Insanity.*

The trial judge instructed the jury that insanity was an affirmative defense and that the accused had the burden of proving by a fair preponderance of the

evidence that he was insane at the time the crime was committed. Relator now contends that the court's charge deprived him of due process of law because a defendant in a criminal trial never has the burden of proof.

 Federal law does not require that the state take upon itself the burden of proving the sanity of an accused, nor does it prescribe any rule regarding the defendant's burden of proof on such an issue. This is a state matter. Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). In the instant case, the charge of the court was in accordance with Pennsylvania law [Commonwealth v. Updegrove, 413 Pa. 599, 198 A.2d 534 (1964); Commonwealth v. Scovern, 292 Pa. 26, 140 A. 611 (1927)] and the provisions of Pennsylvania law in that regard do not offend due process.

### 4. *Trial Rulings.*

Relator's remaining contentions (items 4 a–e, see p. 415 *supra*) are purely questions of state law without constitutional significance and hence, are not cognizable in this court on a petition for writ of habeas corpus. See, e. g., United States ex rel. Greer v. Pate, *supra*; Reese v. Cardwell, 410 F.2d 1125 (6th Cir. 1969); Williams v. Peyton, 297 F.Supp. 857 (W.D.Va.1969); United States ex rel. Jablonsky v. Follette, 291 F.Supp. 828 (S.D.N.Y.1968); United States ex rel. Lopinson v. Bookbinder, 237 F.Supp. 180 (E.D.Pa.1964). Nor is the cumulative effect of these alleged errors so conspicuously prejudicial as to amount to a denial of a fair trial. United States ex rel. Cannon v. Maroney, 373 F.2d 908 (3d Cir. 1967). In any event, I agree with the Pennsylvania Superior Court that relator's arguments on these points are without merit. See Commonwealth v. Dessus, 214 Pa.Super. 347, 257 A.2d 867 (1969).

The petition for writ of habeas corpus will be denied without an evidentiary hearing.

### ORDER

This 29th day of June, 1970, it is ordered that the Petition of Ronald James Dessus for Writ of Habeas Corpus is denied.

There is probable cause for appeal.