**UNITED STATES of America ex rel. Frank SAUNDERS**

v.

**John T. ZIEGLER, Superintendent of Broadmeadows Prison, Delaware County, Pennsylvania.**

**Civ. A. No. 70–2374.**

United States District Court, E. D. Pennsylvania.

Nov. 25, 1970.

Carmen P. Belefonte, Kassab, Cherry, Curran & Archbold, Chester, Pa., for petitioner.

Stephen J. McEwen, Jr., Dist. Atty., Delaware County, by Ralph B. D'Iorio, Asst. Dist. Atty., Media, Pa., for respondent.

## OPINION

LUONGO, District Judge.

In this petition for writ of habeas corpus, Frank Saunders seeks to have declared invalid his state conviction for "Lottery" and "Traffic in Lottery Tickets". The complete state record is before the court. Counsel for the parties have agreed that the state court record contains all the evidence relevant to the issues in dispute and that no evidentiary hearing is required in this court.

Relator claims that he is entitled to release on several grounds: (1) the conviction was based on evidence seized during an unlawful search of his person in violation of his Fourth Amendment rights; (2) testimony by a prosecution witness to the effect that Saunders refused to answer a question by police as to possession of certain alleged lottery slips deprived Saunders of his Fifth Amendment rights; (3) the trial court's refusal to compel disclosure of the identity of a confidential informer violated relator's Sixth Amendment right to confront witnesses; and (4) the trial court commented, in violation of relator's Fifth Amendment rights, on relator's decision not to testify on his own behalf and not to offer evidence in his own defense.

**(1) Arrest.**

Relator was arrested and searched in the early afternoon of October 10, 1968 pursuant to an arrest warrant issued by a magistrate in Chester, Pennsylvania. The police officers who conducted the search found lottery slips and a good

deal of cash on relator's person. Prior to the actual arrest Saunders had attempted to flee from the police. During the flight the police observed Saunders throw out of the window of his automobile other lottery slips which the police retrieved. Both the evidence seized from Saunders' person and the lottery slips thrown out of the window of the car during flight were admitted in evidence at trial after the trial judge had refused to suppress the evidence after a pre-trial suppression hearing.

It is relator's contention that the arrest and the search of his person which accompanied it was unlawful because the arrest warrant was invalid.[1]

■ After a full hearing on the motion to suppress, the trial court concluded that the following facts had been presented to the issuing magistrate, either by affidavit or sworn testimony,[2] at the time the arrest warrant was issued:

■ In early September, 1968, state and local police received information from a confidential informer that a numbers bank was being operated at 814 East Seventh Street, Chester, Pennsylvania. The informer advised the police that the pick-up man would be driving a red Mustang and described in detail the time and the route of his stops. On September 6, 1968, experienced officers of the State Police vice squad began a surveillance of the operator of the red Mustang (later identified as relator)

and followed him on the route previously described by the informer. On that same day, the police observed a person at one of the stops handing Saunders pieces or slips of paper.[3]

The police conducted a surveillance of relator's activities on nine separate occasions. On each occasion relator began his route at 1:30 P.M., made stops at the same taprooms, and concluded the tour at 2:00 P.M. at 814 East Seventh Street. The police knew from their vice squad experience that this was the usual time for a pick-up man to make his rounds because horse races (upon which the numbers game is based) begin at 2:00 P.M.

At the suppression hearing, further evidence was presented to the trial judge as to the circumstances surrounding relator's arrest and the subsequent search and seizure. The police initially attempted to arrest Saunders by pulling their unmarked car out in front of his car as he was picking up slips. The police identified themselves, but Saunders fled the scene in his automobile, the police in hot pursuit. A few blocks later, as Saunders was slowing his vehicle to a halt, he threw small slips of paper out of the window. When he stopped, the police arrested him. After retrieving the slips of paper, which were identified as lottery or numbers slips, the police proceeded to search Saunders and found

---

1. There had also been issued search warrants for Saunders' automobile and residence. Since no evidence used at trial is alleged to have been obtained pursuant to the search warrants there is no need to consider whether they were validly issued.

2. Under state law, information supplied to a local magistrate by a police affidavit may be supplemented by the sworn testimony of the police officers. See Commonwealth v. Crawley, 209 Pa.Super. 70, 223 A.2d 885, aff'd per curiam 432 Pa. 627, 247 A.2d 226 (1968). See also United States ex rel. Gockley v. Myers, 314 F. Supp. 839, (E.D.Pa.1970); United States ex rel. Johnson v. Rundle, 280 F.Supp. 453 (E.D.Pa.), aff'd, 404 F.2d 42 (3rd Cir. 1968). cert. denied, 395 U.S. 937, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969).

3. This information was contained in the police notes of the surveillance. At the suppression hearing, the police officer could not recall whether he had conveyed this fact to the magistrate on the evening that the arrest warrant was issued, but he specifically recalled referring to his notes while before the magistrate. The trial judge concluded that this vital fact must have been conveyed by the experienced police officers. Since the factual conclusion is fairly supported by the state court record, it is presumptively correct. 28 U.S.C. § 2254(d). Since relator adduced no contrary evidence, the conclusion of the state court will be accepted as fact. United States ex rel. Dickerson v. Rundle, 430 F.2d 462 (3rd Cir. 1970).

more lottery slips and a large amount of cash on his person.

The trial judge concluded that the evidence presented to the issuing magistrate was sufficient basis for issuance of the warrant, that the arrest and search and seizure were lawful, and that the evidence thus seized was properly admissible.

In order for a valid arrest warrant to issue, there must be presented to the judicial officer sufficient facts from which he may independently conclude that probable cause exists. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Probable cause exists when sufficient facts have been established to warrant a man of reasonable caution with reasonably trustworthy information in believing that an offense had been committed and that the accused had committed that offense. See Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ ■ Where a warrant is based on information received from an informer, the police must establish that the informer was reliable and that the manner in which the informer obtained his information was reliable. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The credibility of the informer and the reliability of his information may be established by corroborating external circumstances. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Costello v. United States, 324 F.2d 260 (9th Cir. 1963), cert. denied, 376 U.S. 930, 84 S. Ct. 699, 11 L.Ed.2d 650 (1964); United States ex rel. Altizer v. Mazurkiewicz, Civil Action No. 70–777 (E.D.Pa., filed June 8, 1970); United States v. Altizer, 308 F.Supp. 376 (E.D.Pa.1970).

In the instant case, the informer's credibility and the reliability of his information were sufficiently established by the police at the time the warrant was issued. The police affidavit indicated (although without detail) that the informer had previously supplied information which had led to a number of convictions, but more importantly, police surveillance of Saunders' activities had corroborated the informer's information as to the route, the time of day the route was travelled, and to the type of automobile used. From what the police had themselves observed it was obvious that the information supplied by the informer was based on personal observation and was more than a rumor of general circulation in the underworld. See Spinelli v. United States, *supra.*

■ ■ From all the information presented to him, the magistrate could reasonably conclude that an offense had been committed and that Saunders had committed it. There was probable cause for the issuance of the arrest warrant. Toohey v. United States, 404 F.2d 907 (9th Cir.1968); Churder v. United States, 387 F.2d 825 (8th Cir.1968) (Opinion by Blackmun, J.); United States v. Pitt, 382 F.2d 322 (4th Cir. 1967). The arrest warrant was validly issued and the search of Saunders' person made contemporaneously therewith was valid, and the evidence thus seized was properly admissible. See Nunez v. United States, 370 F.2d 538 (5th Cir. 1967); United States ex rel. Jenkins v. Bookbinder, 291 F.Supp. 87 (E.D.Pa. 1968); United States ex rel. Dessus v. Commonwealth of Pennsylvania, 316 F. Supp. 411 (E.D.Pa.1970).

(2) Testimony as to Pre-Trial Refusal to Answer Questions.

During the prosecuting attorney's examination of one of the police officers who had participated in relator's arrest, the following occurred:

"Q. And Commonwealth's Exhibit C–5, sir, can you tell me what that is?

A. This is one of the pieces of paper that was thrown out of the car by Mr. Saunders.

Q. And you saw him throw them out of the car?

A. Definitely, yes.

Q. And did you see where they had landed when they were thrown out of the car?

A. Yes, I did.

Q. And is that the point where you picked them up?

A. Yes, it was.

Q. And after you picked these up, Trooper Newcomb, what did you do with them?

A. *I brought them back, showed them to Mr. Saunders, and asked him if these were his, and he said he didn't have anything to say."* (Emphasis added) (N.T. 62–63).

Saunders now alleges that this testimony violated his constitutional rights in that it improperly brought to the attention of the jury that he had invoked his right to remain silent, or alternatively that his remaining silent might have been regarded by the jury as a tacit admission.

■ ■ The prosecution may not use at trial the fact that an accused stood mute or exercised his privilege to remain silent in the face of accusation. See Miranda v. Arizona, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Dolleris, 408 F.2d 918 (6th Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969); United States ex rel. Smith v. Brierly, 267 F.Supp. 274 (E.D.Pa.) aff'd, 384 F.2d 992 (3rd Cir. 1967); Commonwealth v. Dravecz, 424 Pa. 582, 227 A.2d 904 (1967). But see Osborne v. United States, 371 F.2d 913 (9th Cir.), cert. denied, 387 U.S. 946, 87 S.Ct. 2082, 18 L.Ed.2d 1335, reh. denied, 389 U.S. 891, 88 S.Ct. 23, 19 L.Ed.2d 207 (1967). In the instant case, the prosecution did not deliberately elicit this testimony. A careful examination of the

transcript indicates that the prosecuting attorney was seeking only to identify and to establish proper police custody of the evidence seized at the time of relator's arrest. Further, the prosecution did not seek a charge that Saunders' silence evidenced guilt. See United States ex rel. Smith v. Brierly, *supra.* Under the circumstances it cannot be said that the State "used" this evidence to convict relator. See United States v. Dolleris, *supra.*

■ ■ Even if, however, this testimony were to be construed as a comment upon the exercise of the constitutional privilege against self-incrimination, I would nevertheless refuse to grant habeas relief. Under federal law, the deliberate bypassing of state procedures requires denial of such relief. See Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Whether or not an accused has waived his rights by deliberately bypassing state procedures is, of course, a question of federal law. Fay v. Noia, *supra.* An effective waiver of constitutional rights requires an "intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ ■ In my view, there was a deliberate bypassing of state procedures in the instant case. There was no objection to the testimony in question at any time during the trial, and it was not attacked in post-trial motions.[4] Counsel's failure to object to that testimony and counsel's failure to request cautionary instructions appears to have been deliberate and part of the trial strategy. The most the jury could have inferred from Saunders' refusal to answer the question as to the slips was that he had possessed them just prior to his arrest. Relator made no effort to refute that

4. Under Pennsylvania law, this omission precludes raising the issue on appeal or in collateral proceedings attacking the conviction. See Commonwealth v. Sliva, 202 Pa.Super. 455, 198 A.2d 354, rev'd on other grounds, 415 Pa. 537, 204 A.2d 455 (1964).

point, which had been testified to by the police. His counsel's cross-examination seemed, instead, to be aimed at establishing that the police never saw him actually pick up number slips.

 Moreover, the error, if any, was harmless beyond a reasonable doubt and could not have contributed to the verdict obtained. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284 (1969). Saunders was caught red-handed by the police, he never refuted possession of the lottery slips, the prosecution presented overwhelming evidence of guilt. Under the circumstances any error that was committed in having Saunders' silence brought to the jury's attention was clearly harmless, and could not have affected the jury's verdict. See Harrington v. California, *supra;* United States ex rel. Gaines v. Rundle, 435 F.2d 700 (3rd Cir., filed November 6, 1970).

(3) Informer's Identity.

 During defense counsel's cross-examination of one of the State Police officers who conducted the surveillance, the officer was asked how he knew what was taking place inside the various taprooms. The officer replied that he had no actual knowledge outside the information received from the confidential informer. Saunders' counsel moved for a mistrial. The motion was denied.[5] Counsel then requested that the Commonwealth supply relator with the identity of the informer.[6] That request was also denied. Saunders now

contends that the trial court's refusal to order the Commonwealth to disclose the identity of its confidential informer deprived him of his right under the Sixth Amendment to confront witnesses in that it prevented him from properly cross-examining the police officer and denied him the opportunity to cross-examine a principal witness (the informer) to the acts complained of in the charge.

In McCray v. Illinois, 386 U.S. 300, 313–314, 87 S.Ct. 1056, 1064, 18 L.Ed.2d 62 (1967), the Supreme Court specifically rejected the contention that the confrontation clause of the Sixth Amendment requires the prosecution to disclose the identity of a police informer:

"If the claim is that the State violated the Sixth Amendment by not producing the informer to testify against the petitioner, then we need no more than repeat the Court's answer to that claim in Cooper v. [State of] California [386 U.S. 58, 87 S.Ct. 788, 17 L. Ed.2d 730]:

'Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront a witness against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit.' [Citation]

On the other hand, the claim may be that the petitioner was deprived of his Sixth Amendment right to cross-ex-

---

5. The trial judge agreed with defense counsel that the remark was prejudicial, but stated it was responsive to defense counsel's improper question. Since the statement was in response to a question on cross-examination, relator has waived his right to complain here about its prejudicial nature. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States v. Shannon, 424 F.2d 476 (3rd Cir. 1970).

6. Under either Pennsylvania or federal law, a defendant is entitled to have disclosed to him the identity of a confidential police informer only if the informer

(a) participated in the criminal activities of which the accused is charged, or (b) was a material eyewitness to these alleged criminal activities, or (c) is otherwise needed for a fair determination of the issues. See Commonwealth v. Carter, 427 Pa. 53, 233 A.2d 284 (1967); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). See Wigmore, § 374, Vol. 8, 3d Edit. The trial judge concluded, and I agree, that in the instant case, relator was not entitled to have the identity of the informer disclosed to him under any of the foregoing theories.

amine the arresting officers themselves, because their refusal to reveal the informer's identity was upheld. But it would follow from this argument that no witness on cross-examination could ever constitutionally assert a testimonial privilege, including the privilege against compulsory self-incrimination guaranteed by the Constitution itself. We have never given the Sixth Amendment such a construction, and we decline to do so now."

(4) Court's Comment on Relator's Failure to Present a Defense.

 The trial judge instructed the jury concerning the effect of an indictment that:

"The defendant under our law is presumed to be innocent and the mere fact that he was indicted by the Grand Jury only means that *without hearing his defense the evidence appeared* to be sufficient to justify holding him for trial." (emphasis added) (N.T. p. 94).

Saunders did not testify and did not present any evidence on his own behalf at trial. He claims that the above quoted portion of the charge penalized him for exercising his right to remain silent and, in effect, constituted an instruction to the jury that his silence at the trial was evidence of guilt.

The Court's charge, taken as a whole, negates any such inference. Immediately after making the quoted statement, the trial judge instructed the jury that an accused is presumed to be innocent and that the prosecution is obligated to prove guilt beyond a reasonable doubt. No reference was made by the Court, one way or the other, to Saunders' failure to present evidence on his own behalf or to his decision to remain silent. Further, after counsel objected to the quoted portion of the charge, the Court cautioned the jury that its decision must be based only on the evidence presented

at trial, and not on any past proceedings. (N.T. p. 105).

Relator's right to remain silent was not infringed by the charge of the court.

Relator's claims lack merit and the petition for writ of habeas corpus will be denied.