**UNITED STATES of America ex rel. Arthur LURRY**

v.

**Robert L. JOHNSON, Superintendent, Graterford Prison.**

**Civ. A. No. 73–2866.**

United States District Court,
E. D. Pennsylvania.

May 23, 1974.

Nolan N. Atkinson, Jr., Philadelphia, Pa., for plaintiff.

Mark Sendrow, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is a petition for a writ of *habeas corpus* in which relator attacks his March 23, 1972, conviction by a jury for rape, statutory rape, sodomy, and corrupting the morals of a minor child.[1] Realtor contends that he was denied the right of confrontation of an adverse witness guaranteed by the Sixth Amendment when the state trial judge permitted a records custodian from Philadelphia General Hospital to read into evidence certain portions of a medical report compiled by a staff physician who had conducted a physical examination of the two young girls immediately after the alleged rape.

The record establishes that the relator through direct appeal has sufficiently exhausted his available state remedies so as to merit this Court's consideration of his constitutional claims. Pursuant to Rule 46 of the Local Rules of Civil Procedure, this *habeas corpus* matter was initially referred to United States Magistrate Edwin E. Naythons. In a report filed on January 25, 1974, Magistrate Naythons recommended that we conduct an evidentiary hearing to determine

---

1. Petitioner was tried before the Honorable George J. Ivins in the Court of Common Pleas of Philadelphia County on Bills of Indictment Nos. 1603–1610, inclusive. All post-trial motions in arrest of judgment and for a new trial were denied and Lurry received a sentence of 7½ to 15 years on the charge of rape and concurrent terms on the other related convictions.

whether petitioner is entitled to *habeas corpus* relief. The report specifically suggested that the Commonwealth be required to present evidence concerning the absence of the examining physician at the trial of this matter.

This Court concurred with Magistrate Naythons insofar as the report recommended that an evidentiary hearing be held. A hearing was scheduled for February 22, 1974, for the sole purpose of determining why the doctor whose report was read into evidence by the records custodian was not available to testify at relator's trial. In lieu of the scheduled hearing, the Commonwealth stipulated that no effort was made by the prosecution to ascertain the availability of the examining physician for trial. The Commonwealth further stipulated that no subpoena was issued upon the doctor.

In order to properly focus upon the precise issue presented in the petition for *habeas corpus* relief, it is necessary to briefly outline the relevant testimony adduced during Lurry's trial. The evidence is substantially as follows:

On December 14, 1970, Linda Cunningham, Michelle Daniels, and Geraldine Howell were shopping in downtown Philadelphia. At the time of this occurrence, Linda was fifteen years old and Michelle was sixteen. The girls, by chance, met the defendant and two companions at a penny arcade. After walking around for a short time, the group (consisting at that point of six people) went to a liquor store on Chestnut Street, at which time defendant and one of his friends bought some vodka. The six individuals then went to a house near the intersection of 38th and Aspen Streets in Philadelphia. Upon arriving at the house, the group went to one of the bedrooms on the second floor and ate sandwiches purchased from a store located near the house in question. Shortly thereafter, Geraldine and David Wilkes, one of relator's friends, left the house.

Linda and Michelle testified that relator physically threatened them and forced each girl to have sexual intercourse with him without their consent. The victims also testified that relator ordered Earl Wilkes, another companion, to take Michelle Daniels to the other bedroom and threatened to kill Earl unless he raped Michelle. Both girls also testified that Earl Wilkes and the relator alternately forced them to engage in sexual intercourse several more times that night. Finally, the two girls stated that Lurry physically coerced them to commit sodomy upon him.

Officer Harold Hooks of the Philadelphia Police Department testified that in the early morning hours of December 15 he was approached near the intersection of 38th and Haverford Streets by members of the Cunningham, Daniels and Howell families. Based on information received, the officer proceeded to a particular house on Aspen Street. Once inside the house, Officer Hooks went up to the second floor. He there found relator asleep in bed clad only in underwear and the two girls in another bedroom in a frightened and hysterical state.

The medical records librarian from Philadelphia General Hospital then read into evidence parts of the medical reports prepared by Dr. Thomas V. Sedlacek in conjunction with his examination of Michelle Daniels and Linda Cunningham on December 15, 1970. The pelvic examination of Michelle Daniels revealed a torn and bleeding hymen and evidence of trauma, tenderness, and inflammation of internal sexual organs. Laboratory specimens were collected, including smears and saline washings taken from the vaginal area. A clinical microscopic examination of the specimens was performed and revealed the presence of male spermatozoa. With regard to Linda Cunningham, the pelvic examination disclosed lacerations of the vagina, torn hymen, and similar indicia of tenderness and inflammation. The microscopic analysis of specimens taken from Linda Cunningham also revealed the presence of male spermatozoa.

On behalf of the relator, David Wilkes testified that before he left the house on Aspen Street with Geraldine Howell the other two girls had not been verbally threatened or sexually abused. Arthur Lurry, the relator herein, testified on his own behalf and denied having sexual intercourse with either of the two girls. Lurry admitted being in the house with the girls on the night in question, but testified that he ordered all three girls and both of his male companions to leave one of the bedrooms so he could go to sleep. According to the relator's testimony at trial, the very next thing he remembered was being awakened by policemen the following morning.

The basis of petitioner's constitutional claim is that the testimony concerning the medical reports was not subject to cross-examination because the records custodian had no personal knowledge or understanding of the contents of the report. Relator argues that the admission in evidence of the medical reports without an opportunity to cross-examine the doctor as to his findings contained therein violated his constitutional right to confrontation guaranteed by the Sixth Amendment.

The Commonwealth's position is that the medical reports were properly admitted in evidence pursuant to the Pennsylvania Uniform Business Records Act, 28 P.S. § 91b and, as such, the relator's right to confront an adverse witness was not violated. It is further submitted by the prosecution that the examinations performed and the reports prepared reflect the routine and customary practices of the staff gynecologists at Philadelphia General Hospital, thus insuring the reliability and accuracy of the findings.

### Discussion

As discussed above, the testimony relative to the medical findings of Dr. Sedlacek was introduced in evidence pursuant to the Pennsylvania Uniform Business Records Act. Relator contends initially that the hospital records were outside the scope of the statutory ex-

ception to the hearsay rule and, therefore, inadmissible to prove the truth of the matter asserted therein. It is not the function of this Court to determine whether the trial judge erred in construing the applicability of a state evidentiary rule. United States ex rel. Brown v. Russell, 455 F.2d 464, 465 (3rd Cir. 1972); United States ex rel. Almeida v. Rundle, 383 F.2d 421, 426 (3rd Cir. 1967); United States ex rel. Dessus v. Commonwealth of Pa., 316 F.Supp. 411, 417 (E.D.Pa.1970). Federal *habeas corpus* relief is available only when the relator alleges violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); United States ex rel. Little v. Twomey, 477 F.2d 767, 770 (7th Cir. 1973); Jones v. Swenson, 469 F.2d 535, 538 (8th Cir. 1972).

From the viewpoint of the disposition of the instant petition, the Court will assume that the medical records were properly admitted pursuant to the Pennsylvania statute. However, the proper admission of evidence under an exception to the hearsay rule does not resolve the question of whether such admission constituted a violation of petitioner's Sixth Amendment rights. Federal constitutional standards must be applied to the factual context of the state conviction in order to determine the issues raised by petitioner's allegations of constitutional deprivation. California v. Green, 399 U.S. 149, 156, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1969); Phillips v. Neil, 452 F.2d 337, 345 (6th Cir. 1971). Thus, the precise issue before this Court is whether the admission in evidence of the medical reports via the testimony of the records custodian in the absence of the examining physician violated relator's right of confrontation.

In order to properly resolve the above-stated issue, particular emphasis must be placed upon the contents of those portions of the respective reports read into evidence. A careful review of the medical report has convinced the Court that the findings contained therein reflect objective, physically observable, factual evidence of forcible in-

tercourse. The medical findings and diagnoses of Dr. Sedlacek were based on the patients' observable physical condition and did not involve an opinion or judgment susceptible to disagreement or varying interpretations among competent physicians. The microscopic examination of the smears and saline washings which revealed the presence of male spermatozoa involved not a complex analysis of subjective symptoms but rather a routine hospital procedure based on clearly objective data. The presence of male spermatozoa, the ruptured and bleeding hymen, and related internal lacerations are factual phenomena disclosed by clinical examinations undertaken by competent hospital personnel. The medical reports, prepared by the doctor simultaneously with the physical examinations, were submitted and filed in the regular course of the hospital's business.

In addition, the examinations were conducted and the reports prepared under conditions in which the motive to falsify or exaggerate is simply not present. That medical reports prepared in the regular course of a hospital's operation, where the necessity for accuracy and preciseness is critical, are inherently reliable is self-evident.

While nonconsensual intercourse is the primary element of the crime of rape, the hospital records merely corroborated the victims' testimony that they had been subjected to forcible sexual intercourse by the relator. The two young girls testified in length with respect to the nature and extent of the sexual assaults perpetrated by Arthur Lurry and Earl Wilkes.

The case of United States v. Johns-Manville Corporation, 231 F.Supp. 690 (E.D.Pa.1964), involved the admission of documentary evidence pursuant to the Federal Business Records Act, 28 U.S.C. § 1732(a), which is the Federal counterpart of the Pennsylvania Uniform Business Records Act, 28 P.S. § 91b. The trial judge in the above case recognized that all documents arguably covered by 28 U.S.C. § 1732(a) may not be admissible in a criminal trial and "that the trial judge has the duty to determine whether such documents are constitutionally admissible under the Sixth Amendment guarantee of confrontation." 231 F.Supp. at p. 695. In accord, McDaniel v. United States, 343 F.2d 785, 789 (5th Cir. 1965).

This Court has studied at considerable length the entire transcript of the state court proceedings and the legal memoranda submitted by the Commonwealth and the relator. Based upon such review, the Court has concluded that relator's constitutional right of confrontation was not violated by the admission of the medical reports pursuant to the statutory exception to the hearsay rule. The conflict between the values protected by the confrontation doctrine and the admission of evidence pursuant to well-settled exceptions to the hearsay law has been recognized by several courts. See, e. g., California v. Green, *supra* 399 at p. 155, 90 S.Ct. 1930; United States v. Lipscomb, 435 F.2d 795, 802 (5th Cir. 1970); Olney v. United States, 340 F.2d 696 (10th Cir. 1965). To resolve this apparent conflict, the trial judge must consider the offense charged, the essential elements of the offense, the character of the evidence sought to be introduced, and, most importantly, the reliability and trustworthiness of the proffered evidence. Only when the above factors have been weighed and analyzed in the context of a particular case may the necessity for actual confrontation and cross-examination be determined. In regard to the instant case, the Court believes that the medical reports were sufficiently reliable and trustworthy to warrant their admission through the testimony of the records custodian. As indicated above, the reports contained medical findings based on objective physical data not reasonably susceptible to varying interpretations. The custodian testified that the reports were kept in the regular course of the hospital's business.

Finally, we are unable to perceive the necessity or importance of cross-examination of the examining physician under the facts of this case. The defendant testified on his own behalf and denied raping or assaulting the two girls. The hospital records did not directly implicate the relator in the crimes charged but corroborated the detailed testimony of the victims. The jury could have believed or disbelieved the testimony of Arthur Lurry, notwithstanding the contents of the report, in that both Linda and Michelle testified as to the participation of Earl Wilkes in the sexual attacks.

For the reasons heretofore stated, relator's petition for a writ of *habeas corpus* will be denied.