John R. CONNER, Petitioner,

v.

Erskind DERAMUS, Superintendent, State Correctional Institution, Huntingdon, Pennsylvania, Respondent.

No. 1482 H. C.

United States District Court,
M. D. Pennsylvania.

April 12, 1974.

Nelson M. Galloway, Harrisburg, Pa., for petitioner.

Robert G. Bigham, Dist. Atty., Gettysburg, Pa., for respondent.

SHERIDAN, Chief Judge.

John R. Conner, a state prisoner, has filed this petition for writ of habeas corpus contending that his conviction for arson was obtained in violation of his constitutional rights.

Petitioner was indicted by the Commonwealth of Pennsylvania on charges of arson and burning with intent to defraud insurer. The charges arose out of a fire on October 11, 1966, at the unoccupied residential dwelling owned by petitioner and Barbara Conner, his wife. At the first trial in 1967, the Adams County Court declared a mistrial be-

cause of a prejudicial statement made by a witness for the prosecution during the presentation of the Commonwealth's case. At the second trial in 1967, petitioner was found guilty by a jury on both charges. The petitioner filed motions for new trial and arrest of judgment. The Adams County Court sustained the motion for a new trial on the grounds that evidence had been erroneously admitted and that a prejudicial statement had been made by the District Attorney during the presentation of his argument to the jury. At the third trial, petitioner was convicted of arson but acquitted of burning with intent to defraud insurer. He was sentenced to 5–10 years to run concurrently with any other sentence he was then serving.

After exhausting state remedies, petitioner filed this petition for writ of habeas corpus alleging that he was deprived of rights guaranteed by the federal constitution. A hearing was held on September 18, 1973, at which petitioner was present and testified and evidence was adduced with respect to the issues presented in the petition. The court, in ruling on petitioner's contentions, has made a careful study of the voluminous state record.

## I. DECLARATION OF MISTRIAL

Petitioner contends that Judge MacPhail of the Adams County Court improperly aborted his first trial by declaring a mistrial and therefore his subsequent reprosecution violated the fifth amendment prohibition of double jeopardy. The declaration of mistrial was made under these circumstances:

Mrs. Hertzler, the fourth witness for the Commonwealth, in the course of her testimony on direct examination stated that the defendant was going back to prison,[1] thereby indicating to the jury that the defendant had a criminal record. Mr. Caldwell, defendant's attorney, objected at this point to Mrs. Hertzler's remark, argued it was prejudicial to the defendant, and asked the court to declare a mistrial, Tr. of Rec. in No. 2

---

[1] "In April, I had came [sic] back—my sister had come back and my mother was sick. We had a party there and—for my little boy. We had come up from York and we had a party and we were going—my sister was going to take my mother and dad down to the doctor's, and they had a disagreement at the time, and he made a threat to her at that time.
DISTRICT ATTORNEY: What, specifically, did he tell her?
A He told her, I don't know what they were arguing about. I walked in and I heard him tell her before he went any place, before he went back to prison to be exact—
MR. CALDWELL: I object. I would like to come to side-bar, Your Honor.
THE COURT: Yes.
(Side-Bar Conference.)
MR. CALDWELL: Your Honor, I object to that remark, it is prejudicial to the Defendant, and I ask for the withdrawal of a Juror.
(End of Side-Bar Conference.)
THE COURT: Members of the Jury, we are going to take a ten minute recess. During the recess, do not speak to anyone about the case or permit anyone to speak to you about it, or speak in your presence. Be ready to come back when we call you.
This Court stands adjourned for ten minutes.

(The proceedings were adjourned. An off-record conference was held in the Judges Chambers between the Court, the District Attorney and Counsel for the Defendant.)
(The proceedings were reconvened at or about 3:40 P.M., with the following proceedings:)
(The Defendant was present in Court with his counsel.)
THE COURT: All right, Mrs. Hertzler, it will not be necessary for you to return to the Stand.
Members of the Jury, in the conduct of the Trial here, a statement was made by a witness which is considered by the Court to be prejudicial. It is within the discretion of the Court, and it is obligatory upon the Court, to take some action if the Court considers this matter so highly prejudicial that the Defendant would not receive a fair trial.
We will, at this time, withdraw a Juror, which means that this will terminate this proceeding at this particular Term of Court, and we will hold the Defendant for Trial in August.
You may be excused until 9:30 tomorrow morning. Court is adjourned until 9:30 tomorrow morning." Tr. of Rec. in No. 2 May Term, 1967, pp. 112–114 (1st trial).

May Term, 1967, p. 113 (1st trial). The court declared a ten minute recess and the District Attorney, defendant's counsel, and Judge MacPhail conducted an off-the-record conference in chambers. When the trial resumed, Judge MacPhail told the jury that a statement made by a witness was considered by the court prejudicial, that it was obligatory upon the court to take some action if the statement was so highly prejudicial that the defendant would not receive a fair trial, and that the court, therefore, was declaring a mistrial, Tr. of Rec. in No. 2 May Term, 1967, p. 114 (1st trial).

Although the ruling is ambiguous as to whether Judge MacPhail ordered the mistrial *sua sponte* or in effect sustained defendant's motion for mistrial, the record supports the conclusion that both defense counsel and Judge MacPhail believed a mistrial should be declared due to the prejudicial statement and that, therefore, the court in declaring a mistrial sustained defense counsel's motion.

■■ Petitioner, at the habeas corpus hearing, testified that Mr. Caldwell told him upon returning from Judge MacPhail's chambers that the motion for a mistrial had been withdrawn and the trial would continue. . Petitioner presented no evidence to support this contention. Although petitioner submitted voluminous material, including several affidavits, in support of his petition, there is no affidavit from Mr. Caldwell. Petitioner did not have Mr. Caldwell testify at the habeas corpus hearing. Hence, petitioner's testimony on this matter is nothing more than unsupported hearsay. There is nothing in the record to support this assertion; the motion for a mistrial was never withdrawn on the record. Defendant's consent to a mistrial need not be express, but may be implied from the totality of circumstances attendant on a declaration of mistrial. United States v. Goldstein, 2 Cir. 1973, 479 F.2d 1061, 1067. The

court finds, therefore, that Judge MacPhail, in declaring a mistrial, did so pursuant to defense counsel's motion.

■ Furthermore, even if the court had declared a mistrial *sua sponte*, the record would support a finding that there was a "manifest necessity" to abort the trial. The test utilized in applying the fifth amendment prohibition of double jeopardy [2] to situations giving rise to mistrials was first stated in United States v. Perez, 1824, 9 Wheat. 579, 6 L.Ed. 165.

". . . We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. . . . " 9 Wheat., at 580.

In Gori v. United States, 1961, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901; United States v. Jorn, 1971, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, and Illinois v. Somerville, 1973, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425, the Supreme Court reaffirmed the Perez "manifest necessity" test. While the Perez doctrine

2. The double jeopardy provision of the fifth amendment was made directly applicable to the states in Benton v. Maryland, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707.

stands as a command to trial judges not to foreclose the defendant's right to have his trial completed until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings, a defendant's valued right to have his trial completed by a particular tribunal must in some circumstances be subordinated to the public's interest in fair trials designed to end in just judgments. United States v. Jorn, supra.

In its most recent decision involving double jeopardy, Illinois v. Somerville, 1973, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425, the Supreme Court held that a trial judge has a broad discretion to determine what factual situations merit a mistrial and allow a defendant to be reprosecuted. In reviewing a trial court's declaration of a mistrial, the court must look at the possibility of manipulation inherent in the procedure complained of, the alternatives available to the trial judge at the time, and the presence of some important countervailing interest of proper judicial administration. Illinois v. Somerville, supra; United States ex rel. Russo v. Superior Court of New Jersey, Law Division, Passaic County, 3 Cir. 1973, 483 F.2d 7; United States ex rel. Gibson v. Ziegele, 3 Cir. 1973, 479 F.2d 773.

It was very prejudicial to the defendant for the jury to know that he had a criminal record. Defendant's decision not to testify at any of his trials, thereby thwarting any attempt to get his criminal record introduced for impeachment purposes, may have been motivated, at least in part, by a desire to prevent the prosecution from informing the jury that he had a criminal record, realizing that such a revelation could be very prejudicial to his case. Defense counsel's motion for a mistrial indicates that he viewed Mrs. Hertzler's statement to be very prejudicial to the defendant. The witness' statement could have been grounds for reversal of any conviction obtained at the trial. A trial judge correctly declares a mistrial when, in his discretion, an impartial verdict cannot be reached. McNeal v. Hollowell, 5 Cir. 1973, 481 F.2d 1145, 1150. As the Supreme Court stated in Illinois v. Somerville, supra: "But where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice." 410 U.S. at 471, 93 S.Ct. at 1074. Likewise, in the instant case, defendant's right to have his trial completed by a particular tribunal must be subordinated to the public's interest in fair trials designed to end in just verdicts. Thus the record supports a finding that there was a "manifest necessity" for a mistrial.

Moreover, since the court has concluded that a mistrial was declared in response to defense counsel's motion, and that the motion was not withdrawn as evidenced by the record, petitioner's testimony notwithstanding, the declaration of mistrial did not bar reprosecution. Where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial removes any barrier to reprosecution, even if defendant's motion is necessitated by prosecutorial or judicial error, United States v. Jorn, 400 U. S. at 485, 91 S.Ct. 547.

Therefore, for the reasons stated above, the court concludes that in the circumstances of this case, petitioner's reprosecution did not violate the double jeopardy provision of the fifth amendment.

## II. IDENTIFICATION TESTIMONY: PHOTOGRAPHIC DISPLAY AND LINEUP

Harry Noll, an important identification witness for the prosecution, testified that he saw petitioner at the fire and overheard him say "Let the son-of-a-bitch burn." Petitioner claims that it was error to admit this identification testimony for the following reasons:

(1) identifications from the photographic display and at the lineup were made without the presence of counsel, and hence violated his sixth and fourteenth amendment rights; and (2) the lineup was so unduly suggestive and conducive to irreparable mistaken identification that he was denied due process of law.

Noll first identified petitioner by selecting his picture from a photographic display, consisting of several pictures of different persons, shown him by Officer Regan of the Pennsylvania State Police. The exact date on which Noll made this photo identification was not established, but it is clear that it occurred during the police investigation of the fire and before petitioner's arrest. The fire occurred on October 11, 1966. On January 23, 1967, petitioner was arrested. On January 31, 1967, Noll identified petitioner at a lineup. A preliminary hearing was held on February 1, 1967, and petitioner was indicted on April 24, 1967.

██ The sixth amendment does not guarantee an accused the right to have counsel present when the government conducts a photographic display, containing a picture of the accused, for the purpose of allowing a witness to attempt an identification of the offender. United States v. Ash, 1973, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619. Thus, Noll's initial identification of petitioner from pictures exhibited to him by Officer Regan did not violate any constitutional guarantee.[3]

██ Noll subsequently identified petitioner at a post-arrest, pre-indictment lineup without notice to and in the absence of petitioner's counsel. In United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the Supreme Court held that a post-indictment lineup was a critical prosecutive stage at which an accused was entitled to the presence of counsel. At the same time, the Court held in Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, that the admission of in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error.

In Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the Court held that the constitutional rules established in *Wade* and *Gilbert* were not retroactive and had prospective application only—i. e., established a right to counsel at post-indictment lineups for an accused in all instances occurring after June 12, 1967, the date *Wade, Gilbert* and *Stovall* were decided. Since petitioner's lineup took place on January 31, 1967, the right to counsel established in *Wade* has no application in this case.[4] Stovall v. Denno, 388 U.S. at 296–301, 87 S.Ct. 1967; Coleman v. Alabama, 1970, 399 U.S. 1, 3, 90 S.Ct. 1999, 26 L.Ed.2d 387; Foster v. California, 1969, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402; United States v. Beard, M.D.Pa. 1971, 329 F.Supp. 1172, 1173.

██ There remains the question of whether petitioner, although not entitled to the application of *Wade* and *Gilbert*, is entitled to relief on his claim that in any event the lineup conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of

---

3. Petitioner does not claim that the photographic display was suggestive.

4. In Kirby v. Illinois, 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, the court limited *Wade* when it held that a showup after arrest, but before the initiation of any adversary criminal proceedings, is not a critical stage of prosecution at which the accused is entitled to counsel. Therefore, the right to counsel established in *Wade* is applicable only after the onset of formal prosecutorial proceedings. Thus, at a lineup held after arrest but before the initiation of any adversary criminal proceeding, the accused is not entitled to counsel. Since in the instant case the court has held that *Wade* is inapplicable because petitioner's lineup occurred before the decision in *Wade*, which is to be applied prospectively only, the court does not reach the issue of whether under *Kirby* petitioner had a right to counsel at his post-arrest lineup.

attack upon conviction independent of any right to counsel claim. Stovall v. Denno, supra. A claimed violation of due process of law in the conduct of a confrontation depends on "the totality of the circumstances surrounding it." Stovall v. Denno, 388 U.S. at 302, 87 S.Ct. at 1972. In Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247, in a case where witnesses made in-court identifications arguably stemming from previous exposure to a suggestive photographic array, the Supreme Court restated the governing test:

"[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971.

Thus, an in-court identification is inadmissible only if the lineup is unnecessarily suggestive—i. e., there is a very substantial likelihood of misidentification—*and* from the totality of the circumstances the suggestive out-of-court identification results in a very substantial likelihood of *irreparable* misidentification. Neil v. Biggers, 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.. Thus, the test utilized to determine whether an in-court identification is admissible is: (1) whether the confrontation procedure was unnecessarily suggestive; and, if so, (2) whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. In *Neil* the Supreme Court, in holding that a rape victim's in-court identification and her testimony pertaining to her station-house showup identification were admissible, even though the station-house showup may have been suggestive, stated:

"Some general guidelines emerge from these cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' Simmons v. United States, supra, 390 U.S., at 384, [88 S.Ct., at 971.] While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in *Foster* [Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402]. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* makes clear, the admission of evidence of a showup without more does not violate due process.

"What is less clear from our cases is whether, as intimated by the District Court, unnecessary suggestiveness alone requires the exclusion of evidence. While we are inclined to agree with the courts below that the police did not exhaust all possibilities in seeking persons physically comparable to petitioner, we do not think that the evidence must therefore be excluded. . . .

"*We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive.* As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the

witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. . . ." (Footnotes omitted.) (Emphasis supplied.) 409 U.S. at 198–199, 93 S.Ct. at 381.

■ In the instant case, petitioner, who was age 47, was placed in a lineup whose other members, aged 18, 19, 24 and 28, were all much younger than he.[5] For this reason petitioner contends the lineup was unnecessarily suggestive. Petitioner presented no evidence as to whether the other participants in the lineup were physically comparable (e. g., height, weight, complexion, manner of dress, etc.) to him. The court, merely on the basis of the age difference here, is not convinced that the lineup was so suggestive that there was a very substantial likelihood of misidentification.

■ However, even if the lineup, because of the age differential, were to be considered suggestive, it cannot be viewed as so impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable* misidentification; given "the totality of the circumstances" Noll's in-court identification of the petitioner was reliable. These factors, following the analysis suggested in Neil v. Biggers, supra, have prompted the court to conclude that the identification testimony was reliable enough to go to the jury:

1. The witness had the opportunity to clearly observe the person, standing still, from a distance of 15 to 20 feet:

2. The degree of attention and hence accuracy of the observation are increased by the fact the person under observation stated at the scene of the fire, "Let the son-of-a-bitch burn.";

3. The length of time between the on-the-scene observation and the identification in the lineup was not unduly long;

4. The witness has never doubted the correctness of his identification over the course of three trials;

5. Most importantly, during the police investigation the witness picked petitioner's picture from a display of photographs of several persons and identified him with certainty *before petitioner's arrest* and *before the lineup.*

Weighing all the factors, the court finds no substantial likelihood of misidentification. Moreover, a reading of Noll's testimony indicates that his in-court identification was based upon what he saw at the fire and not what he saw at the lineup. *See* Tr. of Rec. in No. 2 May Term, 1967, pp. 133–36, 142 (3d trial); *see also* Tr. of Rec. in No. 2 May Term, 1967, p. 158 (2d trial). Thus, as in Coleman v. Alabama, 1969, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, the record supports a finding that Noll's in-court identification was *entirely* based upon observation at the time of the fire, and not at all induced or tainted by the conduct of the lineup. In short, the "totality of circumstances" support the reliability and hence the legality of Noll's testimony and under the test established in Neil v. Biggers, supra, the testimony was properly allowed to go to the jury.[6]

### III. PERJURED TESTIMONY

■ Petitioner contends that Harry Noll, a witness for the prosecution, gave perjured testimony at the third trial and that the District Attorney knew that it was false testimony. This is a serious charge since it is an established constitutional principle that a State may not knowingly use false testimony to obtain a tainted conviction; a prosecutor has a

---

5. Supposedly these were the only people being detained at the Adams County jail and thus were the only men available for use in a lineup. However, as in Neil v. Biggers, 1972, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401, the court is not convinced that the poľ exhausted all possibilities in seeking persons comparable in age to the petitioner.

6. The *Neil* test is applied in a similar manner in Patler v. Slayton, E.D.Va.1973, 353 F.Supp. 376.

duty to correct the testimony of a witness which he knows to be false, and failure to do so violates the due process clause of the fourteenth amendment. Napue v. Illinois, 1959, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

■ Noll's testimony in this case was directly challenged by petitioner, primarily through the affidavit of Barbara Conner, his wife,[7] who averred that Noll had been paid by her mother to testify falsely against her husband. This affidavit had been submitted to the Adams County court after the second trial in support of petitioner's motion for new trial and arrest of judgment. Petitioner claims that the Commonwealth had knowledge of this affidavit at the time of the third trial and thus introduced Harry Noll's testimony knowing it to be false.

At the habeas corpus hearing, Barbara Conner testified that the facts averred in the affidavit were unknown to her and that she signed the affidavit against her will only after petitioner had severely beaten her on several occasions for refusing to sign and had threatened to kill her and harm her son unless she cooperated.[8] Petitioner claims his wife testified falsely at the habes corpus hearing in that she did freely and willingly compose and sign the affidavit. To support his position, petitioner submitted numerous materials, including the affidavits of the notary public, Jerome Fine, and Attorney John Krafsig.

Regardless of the veracity of Barbara Conner's testimony at the habeas corpus

hearing, the court need not make factual findings on the issue of whether her affidavit was coerced or voluntary since this is irrelevant to the question of whether the prosecution knowingly introduced false testimony. The court, therefore, has not considered her testimony at the hearing.

At the time of the third trial the District Attorney knew that Harry Noll's testimony was disputed by the affidavit of petitioner's wife. The District Attorney did not know personally who was telling the truth and was entitled to believe his own witness and present his testimony. Ultimately, it was for the jury to decide whom to believe and to make factual determinations. In short, all that exists here is a conflict in testimony. There is not one scintilla of evidence that the District Attorney knew or should have known that any of the testimony he presented was false.[9] The introduction of Harry Noll's testimony clearly did not violate petitioner's constitutional right to due process of law.

## IV. RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES

■ The Adams County Court sustained numerous objections on evidentiary grounds to questions petitioner asked on cross-examination. Petitioner claims this prevented him from effectively impeaching opposition witnesses through cross-examination. Although petitioner had a constitutional right to confront and cross-examine the witnesses against him, Brookhart v. Janis, 1966, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d

---

7. Barbara Conner's affidavit is included in the state record of the second trial, attached to the document titled "Additional Reasons In Support Of Motion For New Trial And In Arrest Of Judgment" filed by John Krafsig, Jr., attorney for petitioner at his second trial.

The full text of the affidavit also can be found in footnote 1 of this court's opinion in Conner v. Deramus, No. 1482 H.C., (M.D. Pa., 1974).

8. In Conner v. Deramus, No. 1482 H.C., (M. D.Pa., 1974), this court for the reasons

stated therein held that Barbara Conner's testimony at the habeas corpus hearing was not barred by marital privilege.

9. In convicting petitioner of arson, the jury apparently found Noll a credible witness. This court's discussion of the due process issue concerning knowing use of perjured testimony is not intended to indicate that the court doubts in any way the jury's factual determination, which is supported by the record, or that it believes Noll's testimony was false. Credibility was a question for the jury, not for this court.

314, that right was not violated because the trial court disallowed certain questions under the Pennsylvania rules of evidence. Such evidentiary rulings, based on state law, not raising issues of constitutional magnitude, are not subject to review in habeas corpus. United States ex rel. Dessus v. Commonwealth of Pennsylvania, E.D.Pa.1970, 316 F.Supp. 411, 417, 422, aff'd 3 Cir. 1970, 452 F.2d 557; United States ex rel. Cannon v. Maroney, 3 Cir. 1967, 373 F.2d 908.

## V. CHARGE TO JURY AFTER DEADLOCK

After the jury had been deliberating for more than five hours and had reported that it had a question and could not reach a verdict on arson, the following colloquy took place between the foreman of the jury and the court:

"(Court reconvened and the Jury returned with a question at or about 4:15 p. m.)

THE COURT: Members of the Jury, you have submitted a question to the Court which reads as follows:

Deadlocked on arson count. Should we try for a verdict on burning to defraud insurer?

In view of the fact that one of the elements of the crime of burning to defraud an insurer involves an incendiary fire, that is setting a fire by someone, you could not reach a verdict on burning to defraud an insurer if you can't reach one on arson because the same element is there. I would like to say that as you probably surmised from the testimony in the case, this is the third trial of this particular cause, and every time we try the case the witnesses have to come here and, of course, both the Defendant and the Commonwealth have an interest in the outcome of the case. And we would not under any circumstances ask any of you to vote against your conscience, but we would ask whether or not you feel this is absolutely hopelessly deadlocked or whether or not you could consider the view points of one another a little bit longer

in an effort to reach a verdict. If you think it's hopeless, so be it, but if you think there is a possibility that you may be able to reach a verdict within a reasonable time the Court would like to urge you to do so. Mr. Foreman, how do you size up the situation?

FOREMAN: There was one question that was asked just before we came out, and this was regarding testimony given in the trial. We all seem to be rather vague as to the exact wording of the thing.

THE COURT: All right.

FOREMAN: Would it be possible to have this small portion of the trial read back to us. We have a specific question.

THE COURT: All right, can you draft that question for me? All right, supposing you retire to the Jury Room to draft the question and come back in when you're ready. We'll wait here for you.

(Jury retired to the Jury Room.)

. . . . . .

(The Jury returned.)

THE COURT: Now members of the Jury, your question is: During Earl Rexroth's testimony did Earl testify how far he was from Mr. Conner when he saw him at the fire? Or where was Earl Rexroth standing when he saw Mr. Conner during the fire? I'm going to ask Mrs. Staley, our Court Reporter, to read to you practically all of Mr. Rexroth's testimony which, of course, was very short. The only part we will be omitting is where he testified who he was and what relationship Mr. Conners and Mrs. Conners had to him. All right, Mrs. Staley.

(Court Reporter read that portion of the testimony of Earl Rexroth as indicated by the Court.)

THE COURT: Now, that's his testimony with respect to the question that you asked. All right? All right, will you retire to the Jury Room again and let us know whether or not you reach a verdict.

(Jury retired to the Jury Room at or about 4:35 p. m. for further deliberation.)

. . ." Tr. of Rec. in No.2 May Term, 1967, pp. 387–390 (3d trial).

It should be noted that petitioner alleges that Judge MacPhail also said to the jury: "The three trials in this case have cost the taxpayers a lot of money." The trial record, which contains no such statement, and the evidence adduced at the habeas corpus hearing, wherein petitioner offered no evidence in support of this assertion, except his own testimony, clearly does not support this contention. Therefore, the court concludes that Judge MacPhail made no such statement.

■■■ Petitioner contends that the court's charge was coercive and unduly pressured the jury into returning a verdict, that in effect the court gave an "Allen Charge." *See* Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. The court finds that the charge here is not of such a coercive nature as to constitute an Allen Charge. Moreover, even if the court's comments were viewed as constituting an Allen Charge, there would still be no constitutional violation. In United States v. Fioravanti, 3 Cir. 1969, 412 F.2d 407, cert. denied 1969, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88, the Court of Appeals for the Third Circuit prohibited, prospectively, use in the federal courts of this circuit of the Allen Charge, which the court viewed as an unwarranted judicial invasion of the exclusive province of the jury. The court based its decision on the potential for prejudice which this somewhat coercive method of encouraging resolution of jury deadlocks can generate and the difficulty in confining its use within just and equitable bounds. 412 F.2d at 420. But the rule established in *Fioravanti* was not a rule of constitutional law, and hence it is binding only on the federal courts and not on the states. United States ex rel. Thomas v. State of New Jersey, 3 Cir. 1973, 472 F.2d 735, 741. Unless the Supreme Court sees fit to reconsider Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, the state courts remain free to rely upon it and hence to permit Allen-type charges. Thus, the court's charge in this case did not violate petitioner's constitutional rights.

## VI. DEFENSE WITNESSES AND MOTION FOR CONTINUANCE

■■■ Petitioner claims that in violation of the fifth, sixth and fourteenth amendments he was unable to subpoena certain witnesses in his behalf and that the trial court refused to grant a continuance to allow him to contact and produce certain essential witnesses. The court finds that the record does not support this contention. Rather it shows that any difficulty petitioner had in obtaining witnesses was of his own making and was caused largely by his failure to cooperate with court-appointed counsel before trial. Moreover, petitioner has not demonstrated that any such vital witnesses existed. Since this was petitioner's *third* trial, any claim of lack of time to prepare his defense is totally without merit.

## VII. TRIAL RULINGS

The remaining contentions, each of which petitioner claims denied him the right to a fair trial and due process of law, are: (1) that the court at the third trial allowed witnesses for the Commonwealth to change and enlarge upon their previous testimony at the first two trials; (2) that one of the state's expert witnesses was allowed to give an opinion not based on facts in evidence; (3) that the trial court permitted the state to call a new expert at the third trial that had not testified at either of the previous trials; (4) that the trial court allowed the District Attorney to improperly cross-examine defense witnesses; (5) that the District Attorney improperly was permitted to state in his closing argument to the jury that petitioner had not subpoenaed his wife to testify; and (6) that the trial court in its charge to the jury "negated all the evidence raised by the defense," enlarged upon the Com-

monwealth's evidence, and misstated some of the evidence.[10]

■■ The court finds nothing in these contentions which would merit discussion. These contentions are purely questions of state law without constitutional significance and hence are not cognizable in this court on a petition for writ of habeas corpus. United States ex rel. Dessus v. Commonwealth of Pennsylvania, E.D.Pa.1970, 316 F.Supp. 411, aff'd 3 Cir. 1971, 452 F.2d 557; United States ex rel. Cannon v. Maroney, 3 Cir. 1967, 373 F.2d 908; Reese v. Cardwell, 6 Cir. 1969, 410 F.2d 1125. In addition, it is well-settled that errors committed during the trial of a criminal case in state court are not subject to review in federal court unless it is shown that the cumulative effect of the alleged errors were so conspicuously prejudicial as to deprive defendant of a fair trial. United States ex rel. Cannon v. Maroney, supra; United States ex rel. Dessus v. Commonwealth of Pennsylvania, supra. There has been no such showing here. Moreover, the court agrees with the trial court that petitioner's arguments with respect to these contentions are without merit.

---

10. After having reviewed the entire transcript of the third trial and Judge MacPhail's charge to the jury, the court finds that petitioner's characterization of the charge is completely inaccurate.